Carlos Gustavo **DE LA TEJA,**
Petitioner–Appellant,

v.

**UNITED STATES of America, John Ashcroft, Attorney General,**
Respondents–Appellees.

No. 01–14249.

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 2003.

Frederick Skip Sugarman, Atlanta, GA, for Petitioner–Appellant.

Melissa S. Mundell, U.S. Atty., Savannah, GA, Cindy S. Ferrier and Linda S. Wendtland, U.S. Dept. of Justice, Civ. Div., OIL, Washington, DC, for Respondents–Appellees.

Before BLACK and MARCUS, Circuit Judges, and MIDDLEBROOKS *, District Judge.

MARCUS, Circuit Judge:

In this immigration case, Carlos De La Teja appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. De La Teja raises four claims: first, he says that his continuing detention pending the entry of a final order of removal pursuant to § 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c), ("INA"), violates the Due Process Clause of the Fifth Amendment; second, he claims that his detention violates the constitutional prohibition against double jeopardy; third, he argues that his removal would violate the district court's vacated judicial order of deportation; and finally, he alleges that removal would be inconsistent with the United Nations Convention Against Torture. Because De La Teja is no longer being detained pursuant to INA § 236— his order of removal now having become final—the first issue has become moot, depriving us of subject matter jurisdiction over this claim. We possess jurisdiction over the remainder of appellant's claims; however, we find them to be without merit and, accordingly, affirm the district court's order in all other respects.

I.

This story began on June 2, 1980, when De La Teja arrived in the United States among some 125,000 undocumented Cuban nationals during the Mariel boatlift. He was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). In November 1996, he was convicted in the United States District Court for the Southern District of Florida of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and possession of property stolen from interstate or foreign commerce in violation of 18 U.S.C. § 659. He was sentenced to a term of 210 months imprisonment and the district court entered an order of deportation pursuant to 18 U.S.C. § 3583(d). Thereafter, he began cooperating with the government's investigation, and so the government moved to reduce his sentence. In September 1997, the district court granted the motion, reduced the sentence of imprisonment to 60 months and vacated the original judicial order of deportation.

On March 23, 2000, while De La Teja was still in the custody of the Bureau of Prisons, the Immigration and Naturaliza-

---

* Honorable Donald M. Middlebrooks, United States District Judge for the Southern District of Florida, sitting by designation.

tion Service ("INS") issued a Notice to Appear (the charging document). Appellant was charged specifically with being inadmissible to the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(I) & (II), based on convictions that constituted both a crime of moral turpitude and a controlled substance violation. Upon completion of his criminal sentence, the INS detained De La Teja pursuant to 8 U.S.C. § 1226(c) on the ground that he could not demonstrate that, if released, he was neither a danger to the community nor a flight risk.

On January 16, 2001, De La Teja filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that his continued pre-removal-order of detention pursuant to § 1226(c) violated the Due Process Clause of the Fifth Amendment. Thereafter, on June 20, 2001, the district court held that § 1226(c) is not facially unconstitutional, reasoning that as a detained criminal alien, De La Teja did not have a constitutional right to be released from detention prior to removal proceedings. The trial court specifically found that § 1226(c) was designed for the legitimate governmental purpose of ensuring that an alien can be physically located at the conclusion of removal proceedings. This appeal ensued.

Meanwhile, on September 21, 2001, the Notice to Appear was filed, thereby commencing removal proceedings against him before the Immigration Court in Atlanta. De La Teja first appeared before an Immigration Judge on April 16, 2002, at a master calendar hearing which allowed him to plead to the charges set forth in the Notice to Appear. However, the proceedings were continued so that he could obtain legal representation. De La Teja next appeared at a May 14, 2002 hearing, but the proceedings were again continued, this time to allow him to apply for asylum and for the withholding of removal pursuant to

8 U.S.C. §§ 1138(a) and 1231(b)(3), and withholding or deferral of removal pursuant to Article 3 of the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture"). The Immigration Court set an August 27, 2002 deadline for filing such applications, which De La Teja failed to meet. On October 10, 2002, the Immigration Court issued its decision, finding De La Teja removable as charged and pretermitting any potential application for asylum or withholding of removal under Title 8, or withholding or deferral of removal under the Convention Against Torture. Notably, the appellant did not file an appeal with the Board of Immigration Appeals. Accordingly, the order of removal became final on November 12, 2002.

## II.

De La Teja's principal argument on appeal is that under the Supreme Court's recent decision in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), his residence within the territorial boundaries of the United States for over twenty years is sufficient to afford him the fundamental right to be free from physical restraint, and that this right was violated by his pre-removal-order detention. In *Zadvydas,* the Court addressed the detention of aliens who were admitted to the United States but subsequently became subject to a final order of removal. It concluded that construing the applicable statute, 8 U.S.C. § 1231(a), to allow "an indefinite, perhaps permanent, deprivation of human liberty," *id.* at 692, 121 S.Ct. at 2500, "would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause, *id.* at 690, 121 S.Ct. at 2498. The Supreme Court therefore held that " read in light of the Constitution's demands," § 1231(a) "limits an

alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 659, 121 S.Ct. at 2498. Because of the applicability of the Fifth Amendment's due process guaranty to admitted aliens, and the lack of any indication that Congress intended to give the Attorney General unfettered power to hold such aliens for more than six months, the Court established a *presumption* that detention is allowed for six months following the conclusion of the removal period. *See id.* at 701, 121 S.Ct. at 2504–05.

De La Teja contends that every circuit that has addressed the issue since *Zadvydas* has extended its holding to § 1226(c) and found that mandatory pre-removal-order detention under § 1226(c) violates the alien's due process rights. In particular, he directs our attention to *Kim v. Ziglar,* 276 F.3d 523 (9th Cir.) (holding that § 1226(c) is unconstitutional as applied to Kim in his status as a lawful permanent resident alien), *cert. granted, Demore v. Kim,* 536 U.S. 956, 122 S.Ct. 2696, 153 L.Ed.2d 833 (2002); *Hoang v. Comfort,* 282 F.3d 1247 (10th Cir.) (same), *petition for cert. filed,* No. 01–1616 (May 3, 2002); and *Patel v. Zemski,* 275 F.3d 299 (3d Cir.2001) (same).

In response, the government argues that § 1226(c) is constitutional as applied to De La Teja because he is an inadmissible alien who never effected entry into the United States and therefore lacks any constitutional rights to be at liberty within the United States. The government distinguishes *Zadvydas* and the recent circuit cases finding § 1226 detention to be unconstitutional on the grounds that they addressed lawful permanent resident aliens and not inadmissible aliens such as De La Teja. Accordingly, by the government's account, De La Teja may be detained indefinitely under *Shaughnessy v.*

*United States ex rel. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (holding that the continued exclusion of an alien unqualified for admission under existing immigration laws as a security risk, without a hearing, did not deprive him of any statutory or constitutional right even though the result was indefinite detention because of other countries' refusal to admit him). De La Teja responds that *Mezei* should be limited to its particular facts (the alien was denied admission due to national security concerns) and procedural posture (the alien was detained at Ellis Island). We have no occasion to address this issue now, however, because the issue has become moot.

■ It is axiomatic that Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1335 (2001) (quoting U.S. Const. art. III, § 2). The "case or controversy" constraint imposes a "dual limitation" known as "justiciability" on federal courts. *Id.* (quoting *United States v. Fla. Azalea Specialists,* 19 F.3d 620, 621 (11th Cir.1994)). "The doctrine of justiciability prevents courts from encroaching on the powers of the elected branches of government and guarantees that courts consider only matters presented in an actual adversarial context." *Id.* (citing *Socialist Workers Party v. Leahy,* 145 F.3d 1240, 1244 (11th Cir.1998) ("Because the judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in the justiciability doctrine, presents an important restriction on the power of the federal courts.")).

■ In *Al Najjar,* we further explained that the doctrine of mootness derives directly from the case-or-controversy limitation because "an action that is moot cannot be characterized as an active case

or controversy." *Id.* (quoting *Adler v. Duval County Sch. Bd.,* 112 F.3d 1475, 1477 (11th Cir.1997)). As the Supreme Court has defined the doctrine, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). In other words, "[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail,* 996 F.2d 1173, 1175 (11th Cir.1993). If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to afford the plaintiff or appellant meaningful relief, then the case becomes moot and must be dismissed. *See Al Najjar,* 273 F.3d at 1336. Indeed, as mootness is jurisdictional, dismissal is required when the doctrine is implicated. *Id; see also North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) ("The question of mootness is . . . one which a federal court must resolve before it assumes jurisdiction.").

■ De La Teja initially was detained pursuant to 8 U.S.C. § 1226(c), a provision that requires the pre-removal-order detention of all criminal aliens. It directs, in pertinent part, that:

The Attorney General shall take into custody an alien who—

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been [sentenced] to a term of imprisonment of at least one year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1). Thus, the Attorney General is directed by that statute to detain "deportable" criminal aliens during the period following the expiration of their original sentences but prior to a decision regarding their removal. *See id.* §§ (a), (c)(1). The Attorney General has discretion to release an alien, however, but only if the alien or an immediate family member is participating in the federal Witness Protection Program and the alien "satisfies the Attorney General that [he or she] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

At the time that he filed his habeas petition, De La Teja was being detained pursuant to § 1226(c) pending a final decision on the INS's removal petition. However, the circumstances of this case have changed dramatically since then. On October 10, 2002, an Immigration Judge found De La Teja removable as charged in a decision which became a final removal order when De La Teja did not appeal that decision to the Board of Immigration Appeals by November 12, 2002. *See* 8 C.F.R. § 241.1(c).[1] The government avers in a

---

**1.** Under the federal regulations governing removal proceedings, an order of removal becomes final:

(a) Upon dismissal of an appeal by the Board of Immigration Appeals;

supplemental pleading and appellant does not dispute that he did not appeal the judgment of the Immigration Judge, and accordingly his removal order became final on November 12, 2002.

This fundamentally changes the procedural posture of the case. Because a final removal order has been entered, De La Teja is no longer being detained pursuant to § 1226(c), which governs *only* detention prior to a final removal order. Instead, he is being detained now pursuant to a wholly different statute, INA § 241(a), 8 U.S.C. § 1231(a), which controls the detention and removal of an alien subject to a final order of removal. Section 1231(a) provides that ordinarily, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Since De La Teja has been found inadmissible under § 1182(a)(2) and is currently subject to the 90–day removal period, the Attorney General unquestionably has the authority to detain

him, and indeed is statutorily required to do so. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.").[2]

Because the Attorney General no longer is acting pursuant to § 1226(c), it is unnecessary and altogether inappropriate for us to take up the question addressed by the district court—whether De La Teja's detention pursuant to that provision violates the Due Process Clause of the Fifth Amendment. *See Al Najjar*, 273 F.3d at 1339 (noting that the "case or controversy" requirement of Article III unambiguously forbids us from considering the question in the absence of a live dispute). Any opinion on the matter would be purely advisory in nature, and therefore this issue has become moot.[3]

---

(b) Upon waiver of appeal by the respondent;
*(c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;*
(d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;
(e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or
(f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period except where the respondent has filed a timely appeal with the Board. In such a case, the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of any voluntary departure period granted or reinstated by the Board or the Attorney General.
8 C.F.R. § 241.1 (2002) (emphasis added).

2. While it is possible that issues may arise at a later point in time regarding how long the

Attorney General can detain De La Teja after the initial 90–day removal period has expired, *see Zadvydas*, 533 U.S. at 682, 700–01, 121 S.Ct. at 2495, 2504–05 (holding that lawful permanent resident aliens may only be held pursuant to 8 U.S.C. § 1231(a)(6) for a period reasonably necessary to secure the alien's removal and establishing a presumption that detention is reasonable for six months after the conclusion of the removal period), it is clear that the Attorney General currently has the power to detain him pursuant to § 1231(a)(2). Thus, we have no occasion to address that issue today.

3. The narrow exception for actions that are capable of repetition yet evading review applies only to the exceptional circumstance in which the same controversy will recur and there will be inadequate time to litigate it prior to its cessation. *See Al Najjar*, 273 F.3d at 1340. This exception does not apply because the controversy at issue in the district court's opinion necessarily cannot arise again, as De La Teja is now, and will be, subject to a final order of deportation.

■ We add that when an issue in a case becomes moot on appeal, the court not only must dismiss as to the mooted issue, but also vacate the portion of the district court's order that addresses it. *See Al Najjar,* 273 F.3d at 1340. "This practice 'clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance.'" *Id; see also United States v. Munsingwear,* 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950). The policy of vacating the underlying district court order is premised on the principle that "a party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness to be forced to acquiesce in the judgment." *Id; see also U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 25, 115 S.Ct. 386, 391, 130 L.Ed.2d 233 (1994). It is only the "vagaries of circumstance," i.e., the fact that a final order of removal has been entered, that prevents us from deciding the instant appeal. De La Teja should not be bound by the district court's judgment in the absence of an appellate adjudication on the merits of that judgment. Accordingly we dismiss the first issue on appeal and vacate that portion of the district court's order addressing the constitutionality of § 1226(c).

### III.

De La Teja's three remaining appellate claims are not moot because De La Teja is still being detained. First, whether he is held pursuant to § 1226(c) or § 1231(a) plainly does not affect the substance of his double jeopardy claim—that he is being punished again for a crime for which he has already served his sentence. This remains a live controversy as to which we could provide meaningful relief, and accordingly the issue is not moot. *See Al Najjar,* 273 F.3d at 1336. De La Teja also claims that his removal would violate the district court's order vacating its prior judicial removal order entered pursuant to § 1228(c). Again, whether he is detained pursuant to 1226(c) or 1231(a) has no bearing on whether the district court's order precludes the government from removing De La Teja. Nor, finally, does it bear on his third claim as to whether his ultimate removal violates the Convention against Torture. Accordingly, we address each of these claims in turn.[4]

### A.

■ De La Teja argues that the constitutional prohibition against double jeopardy precludes his detention. However, it is by now settled law that the double jeopardy clause applies only to proceedings that are "essentially criminal" and its purpose is to prevent successive proceedings for the same offense. *See Breed v. Jones,* 421 U.S. 519, 528–30, 95 S.Ct. 1779, 1785–86, 44 L.Ed.2d 346 (1975). Deportation is neither criminal nor punitive; it is a purely civil proceeding. *See INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); *see also United States v. Drummond,* 240 F.3d 1333, 1335 n. 3 (11th Cir.2001) (noting that "[a]n arrest and detention pursuant to a deportation proceeding is not an arrest for a federal criminal offense; rather it is a purely civil action to determine eligibility to remain in this country"). De La Teja's detention is civil in nature, thereby precluding the application of the Double Jeopardy Clause. We agree, therefore, with the Ninth Circuit, the only other circuit court to have reached the issue, that deportation proceedings (because they are

---

4. These claims were raised in De La Teja's initial *pro se* brief.

inherently civil in nature) cannot form the basis for a double jeopardy claim. *United States v. Yacoubian*, 24 F.3d 1, 10 (9th Cir.1994).

### B.

De La Teja also says that his current INS detention pursuant to § 1226(c) is in violation of a district court order vacating the court's own prior removal order. The government argues that the district court did not have subject matter jurisdiction over this claim. Alternatively, the government argues that assuming the district court had jurisdiction, the court's denial of De La Teja's claim was correct.

■ Section 1252(g) states in pertinent part that:

[e]xcept as provided [by Section 1252 itself,] no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings....

8 U.S.C. § 1252(g). The Supreme Court has interpreted § 1252(g) to foreclose judicial review for three discrete actions of the Attorney General: his " 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.' " *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999) (emphasis omitted). The Supreme Court expressly found that:

[r]espondents' challenge to the Attorney General's decision to "commence proceedings" against them falls squarely within § 1252(g)—indeed, as we have discussed, the language seems to have been crafted with such a challenge precisely in mind—and nothing elsewhere in § 1252 provides for jurisdiction.

*Id.* at 487, 119 S.Ct. at 945. To the extent that De La Teja's claim that his removal would violate the prior vacated judicial order challenges the INS's decision to commence proceedings against him, the district court did not have jurisdiction to hear that challenge.

■ Moreover, the district court was correct in its determination that the court's order vacating the prior judicial removal order has no bearing on De La Teja's current detention. Judicial removal pursuant to 8 U.S.C. § 1228(c) is wholly distinct from detention pursuant to 8 U.S.C. § 1231(a). Had the district court originally denied the judicial removal order, the INS would not have been barred from instituting proceedings against De La Teja. *See* 8 U.S.C. § 1228(c)(4) ("Denial of a request for a judicial order of removal shall not preclude the Attorney General from initiating removal proceedings pursuant to [§ 1229(a)] upon the same ground of deportability or upon any other ground of deportability provided under [§ 1227]."). There is no textual or logical reason why the vacatur of a judicial removal order somehow would preclude the INS from subsequently initiating removal proceedings if the denial of a judicial deportation order has no preclusive effect on the power of the INS to seek removal.

### C.

Finally, De La Teja claims that his removal would be contrary to the United Nations Convention Against Torture because family members of the co-defendants against whom De La Teja testified are currently government officials in Cuba and would retaliate against De La Teja for his cooperation with the United States government. The district court properly did not reach the merits of De La Teja's claim because the Immigration Court had not yet issued a removal order. It is clear that an alien may not challenge a removal determination through collateral means *prior* to the entry of a final removal deci-

sion by the INS. *See* 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a *final order* under this section.") (emphasis added).

 Further, we note that since the district court issued its decision, the procedural posture of this case has changed and De La Teja is now subject to a final order of removal. Since he has failed to exhaust all available administrative remedies, however, 8 U.S.C. § 1252(d) precludes De La Teja's assertion of a Convention Against Torture claim.[5] The record shows that De La Teja repeatedly failed to present an application for asylum or withholding pursuant to INA § 241(b)(3) or the Convention Against Torture in his hearings before the Immigration Court. The Immigration Court's removal order pretermitting any potential application for withholding under the Convention Against Torture became final when De La Teja did not appeal to the Board of Immigration Appeals. Pursuant to 8 U.S.C. § 1252(d), "[a] court may review a final order of removal *only* if—(1) the alien has exhausted all administrative remedies available to the alien as of right, and (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order." 8 U.S.C.

§ 1252(d)(2) (emphasis added). By not appealing that order to the Board of Immigration Appeals, De La Teja failed to exhaust available administrative remedies, and we cannot reach the merits of his Convention Against Torture claim. *See Taniguchi v. Schultz*, 303 F.3d 950, 956 (9th Cir.2002) ("Taniguchi failed to exhaust her administrative remedies by not appealing the decision of the [Immigration Judge] to the [Board of Immigration Appeals].").

In short, we dismiss the first claim on appeal for want of jurisdiction and vacate the district court's order in so far as it addressed that matter; we otherwise AFFIRM its opinion in all other respects.

DISMISSED in part; AFFIRMED in part.

---

**5.** The government argues that we do not have habeas jurisdiction over this claim because the Convention Against Torture is a non-self-executing treaty, and under its implementing legislation any jurisdiction resides exclusively in the Court of Appeals on direct petition for review after the issuance of a final removal order. We have no occasion to address that argument here, because we find that De La Teja has failed to exhaust his administrative remedies.