[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15179

_____

D.C. Docket No. 6:13-cv-01426-RBD-GJK

JOAN JARA, in her individual capacity, and in her capacity as the personal
representative of the Estate of Víctor Jara,
AMANDA JARA TURNER, in her individual capacity,
MANEULA BUNSTER, in her individual capacity,

Plaintiffs - Appellants,

versus

PEDRO PABLO BARRIENTOS NÚÑEZ,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 3, 2018)

Before WILLIAM PRYOR, JILL PRYOR, and ANDERSON, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether the presumption against

extraterritorial application forecloses exercising jurisdiction under the Alien Tort

Statute, 28 U.S.C. § 1350, over a complaint that alleges wholly foreign conduct. In 1973, Pedro Pablo Barrientos Núñez, a Lieutenant in the Chilean Army, oversaw and participated in the detention, torture, and murder of Víctor Jara in the days following General Augusto Pinochet's coup in Chile. Barrientos moved to the United States in 1989 and became an American citizen in 2010. In 2013, Víctor's family sued Barrientos in the district court and invoked the Alien Tort Statute and the Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note). The district court dismissed the claims where jurisdiction was based on the Alien Tort Statute because the claims did not "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." The claims under the Torture Act proceeded to trial, and a jury awarded the Jaras $28 million. The Jaras now appeal the dismissal of their claims where jurisdiction was based on the Alien Tort Statute. We affirm because a federal court may not exercise jurisdiction under the Alien Tort Statute when all of the defendant's relevant conduct took place outside the United States.

## I. BACKGROUND

On September 11, 1973, the Chilean military overthrew the government of Chile. In the days following the coup, the military detained many civilians who

2

were allegedly sympathetic to the old government. Víctor Jara was one of these civilians, and he was imprisoned between September 12 and 15. During this period, soldiers under the command of Pedro Pablo Barrientos Núñez "blindfolded, handcuffed, interrogated, brutally beat, and otherwise tortured" Víctor. The abuse ended on September 15, when Barrientos shot Víctor in the head during a game of Russian roulette. Soldiers "then shot Víctor Jara's corpse at least forty times" before discarding the body.

In 1989, Barrientos permanently moved to the United States, and in 2010, he became an American citizen. While in the United States, Barrientos has held employment, owned businesses, owned property, declared bankruptcy, transferred assets, and married an American citizen.

In 2012, Víctor's wife and children discovered that Barrientos was living in the United States, and the Santiago Court of Appeals charged Barrientos for the murder of Víctor. But Barrientos refuses to return to Chile to stand trial, Chile does not permit criminal trials *in absentia*, and the United States has not agreed to extradite Barrientos.

The Jaras sued Barrientos in the district court and alleged that Barrientos was responsible for "the arbitrary detention, torture, cruel, inhuman or degrading treatment, and extrajudicial killing of Víctor Jara, as well as the crimes against

3

humanity that took place [in Chile]." For the allegations of torture and extrajudicial killing, the complaint asserted both common-law claims that invoked jurisdiction under the Alien Tort Statute, 28 U.S.C. § 1350, and statutory claims under the Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note), that invoked federal-question jurisdiction, 28 U.S.C. § 1331. *See Doe v. Drummond Co., Inc.*, 782 F.3d 576, 601 (11th Cir. 2015) ("In contrast to the [Alien Tort Statute], which can confer jurisdiction but does not include an independent cause of action, the [Torture Act] provides a cause of action but contains no jurisdictional grant. Our jurisdiction to consider [the] [p]laintiffs' [Torture Act] claims is grounded, instead, in 28 U.S.C. [section] 1331, the general federal question jurisdiction statute." (citation omitted)). And the complaint alleged that the Jaras' remaining common-law claims of cruel, inhuman, or degrading treatment or punishment, arbitrary detention, and crimes against humanity were within the jurisdictional grant of the Alien Tort Statute.

The district court dismissed the claims that invoked the Alien Tort Statute for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The district court explained that the Alien Tort Statute "generally [does not] have extraterritorial application" and that Barrientos's "tortious conduct took place entirely outside the United States." Although the district court weighed Barrientos's American

4

citizenship and the policy goal of denying "a safe haven to human rights abusers,"

it determined that these considerations could not establish federal jurisdiction.

The Jaras proceeded to trial on their claims of torture and extrajudicial

killing in violation of the Torture Act, and the jury awarded the Jaras $28 million

in damages. Barrientos failed to appeal this verdict, and he is no longer

participating in the litigation. But the Jaras appealed the dismissal of their

common-law claims that invoked the jurisdiction of the Alien Tort Statute. This

Court appointed *amicus curiae* to defend the decision of the district court.

## II. STANDARD OF REVIEW

"This [C]ourt is under a duty to review its jurisdiction of an appeal at any

point in the appellate process," *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir.

1985), and "[w]e review our subject matter jurisdiction *de novo*." *Amaya-*

*Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (italics

added). "We review a district court order granting a motion to dismiss *de novo*

. . . ." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). And "[w]e . . . accept

as true the facts as set forth in the complaint and draw all reasonable inferences in

the plaintiff's favor." *Id.*

5

### III. DISCUSSION

We divide our discussion in two parts. First, we explain that the judgment in favor of the Jaras' claims under the Torture Act does not moot this appeal because the Alien Tort Statute provides jurisdiction to award relief for at least one common-law claim that is not available under the Torture Act. Second, we hold that the district court correctly dismissed the Jaras' claims that invoked the Alien Tort Statute because Barrientos's relevant conduct occurred exclusively in Chile and a defendant must have engaged in relevant conduct on American soil before a claim carries sufficient force to displace the presumption against extraterritorial application.

### A.    *This Appeal Is Not Moot.*

*Amicus curiae* argues that the Jaras' common-law claims that invoked jurisdiction under the Alien Tort Statute are moot because the Jaras prevailed on claims of torture and extrajudicial killing under the Torture Act premised on the same underlying tortious conduct, but we disagree. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). But "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation,

6

the case is not moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

The Jaras maintain a concrete interest in the outcome of this litigation. In addition to their statutory claims under the Torture Act, the Jaras asserted a common-law claim for "crimes against humanity," for which the Alien Tort Statute provides jurisdiction. This Court has explained that "crimes against humanity" is a distinct claim with distinct factual predicates: "To prove the claim of crimes against humanity, the [plaintiff must] prove a widespread or systematic attack directed against any civilian population." *Cabello v. Fernández-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005). In contrast, a plaintiff who sues under the Torture Act need not prove that other victims suffered torture. *See* § 3(b)(1), 106 Stat. at 73 ("[T]he term 'torture' means any act, directed against *an individual* . . . ." (emphasis added)). *Amicus curiae* fails to establish that the jury could not have awarded the Jaras additional damages for Barrientos's alleged "crimes against humanity."

The Jaras also argue that this appeal is not moot because they have asserted jurisdiction under the Alien Tort Statute for claims of "arbitrary detention" and "cruel, inhuman, [or] degrading treatment, or punishment," but we need not decide whether these claims are actionable, especially in the light of conflicting

7

statements in our precedents. The Alien Tort Statute provides federal jurisdiction for a "modest number of international law violations" recognized by "the common law," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004), and this Court has made inconsistent statements about whether "arbitrary detention" and "cruel, inhuman, [or] degrading treatment, or punishment" are among those violations. *Compare Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005) (determining that there is "no basis in law to recognize [a] claim for cruel, inhuman, degrading treatment or punishment" when the plaintiff asserted jurisdiction under the Alien Tort Statute), *and Baloco v. Drummond Co.*, 767 F.3d 1229, 1234 (11th Cir. 2014) ("[T]orture claims, *unlike arbitrary detention and cruel, inhuman, degrading or punishment claims*, can support a cause of action [that invokes jurisdiction under the Alien Tort Statute]." (emphasis added) (citing *Aldana*, 416 F.3d at 1247)), *with Cabello*, 402 F.3d at 1154 ("[T]orture, crimes against humanity, and cruel, inhumane, or degrading punishment have been a part of the United States and international law long before [the defendant's] alleged actions."). Because the Jaras' appeal of the dismissal of their claim of "crimes against humanity" is not moot, we need not address whether the Jaras have alleged other viable theories of recovery.

B.    *Absent Any Relevant Conduct in the United States, the Presumption Against Extraterritorial Application Forecloses Jurisdiction.*

8

A claim must "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application" before a federal court may exercise jurisdiction under the Alien Tort Statute. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124–25 (2013). In *Doe*, we explained that "our jurisdictional inquiry requires us to consider the domestic or extraterritorial location where the defendant is alleged to engage in conduct that directly or secondarily results in violations of international law." 782 F.3d at 592. And a claim will carry "sufficient force" to displace the presumption against extraterritorial application only when "*enough* relevant conduct occurred within the United States." *Id.* at 597. This "relevant domestic conduct" may include both primary tortious conduct and affirmative involvement in the torts of others. *Id.* at 598. For example, "actions from within the United States," such as "aiding and abetting and conspir[ing]" with a foreign tortfeasor, may "displace the presumption against extraterritoriality if enough of the relevant conduct occurs domestically and if the allegations of domestic conduct are supported by a minimum factual predicate." *Id.* at 597–98 (emphasis omitted). But this relevant domestic conduct must be "extensive" and "specific." *Id.* at 598. Even allegations that an American defendant "made [a] funding and policy decision[] in the United States" to support

9

a foreign paramilitary group will not "outweigh the extraterritorial location" of foreign torts. *Id.*

The Jaras fail to allege that Barrientos engaged in *any* relevant conduct while on American soil. Barrientos moved to the United States after Víctor's death, and Barrientos's alleged attempts to avoid liability for his actions are irrelevant to his past torts. The Jaras contend that we should examine not only the "location of [Barrientos's] conduct," but also Barrientos's "citizenship, status, residency or other ties to the United States" and "U.S. national interests, such as not providing a safe harbor to individual human rights perpetrators; minimizing any other risk of judicial interference in foreign policy concerns; and avoiding the creation of conflicts between the laws of the United States and of the country where the conduct took place." And the Jaras underscore that Barrientos has avoided justice in Chilean courts and "is present only in the United States and subject only to adjudication by U.S. courts." But although we stated in *Doe* that a defendant's citizenship and policy concerns may be "relevant to our jurisdictional inquiry," we held that these factors cannot establish jurisdiction absent relevant domestic conduct. *Id*. at 594, 597.

*Doe* squarely bars exercising jurisdiction in this appeal. In *Doe*, we determined that the Alien Tort Statute did not confer jurisdiction over a complaint

10

that a natural American citizen and two American corporations, "acting in part from within the United States, aided and abetted or otherwise contributed to human rights violations committed outside the United States." *Id.* at 582. If the citizenship and corporate statuses of the defendants in *Doe* were insufficient to establish jurisdiction, we cannot understand how Barrientos's after-acquired citizenship can support jurisdiction. And this appeal implicates no weightier policy concerns than in *Doe* where we held that allegations that the defendants had funded "a U.S.-designated terrorist organization" in violation of federal law, 18 U.S.C. § 2339B, did "not strike with 'sufficient force' to displace the presumption [against extraterritorial application] and permit jurisdiction." *Id.* at 596–97. We fail to see how the Jaras' complaint could possibly implicate a more substantial policy interest than curtailing funding to a terrorist group.

The Jaras contend that *Kiobel* did not overrule a long line of decisions where federal courts exercised jurisdiction over claims premised on foreign conduct, but we are unpersuaded. The Court in *Kiobel* held that a claim must "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application" before a district court may exercise jurisdiction under the Alien Tort Statute. 569 U.S. at 124–25. And in *Doe*, *Baloco*, and *Cardona v. Chiquita Brands International, Inc.*, 760 F.3d 1185 (11th

11

Cir. 2014), we explained that *Kiobel* foreclosed jurisdiction over claims based on the foreign torts of American corporations and citizens. These precedents control this appeal in the light of the Jaras' failure to allege any relevant conduct on American soil.

Finally, we reject the Jaras' invitation to, "[i]n the alternative, . . . remand the case to the [d]istrict [c]ourt with an order to conduct a proper 'fact-intensive inquiry' analysis of the allegations as required by *Kiobel* and [*Doe*]." We confronted a similar request in *Baloco*, where "[w]e decline[d] to remand [the] case so that the district court may consider [p]laintiffs' request to amend their complaint." 767 F.3d at 1239. We explained that "amendment of the complaint would be futile because it would not allege conduct focused in the United States to a degree necessary to overcome the presumption against extraterritoriality." *Id.* The same analysis applies here. The Jaras can allege only extraterritorial conduct, so they have no prospect of establishing jurisdiction.

## IV. CONCLUSION

We **AFFIRM** the dismissal of the Jaras' claims that invoke jurisdiction under the Alien Tort Statute.