[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 19, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10723
Non-Argument Calendar

_____

BIA No. A78-600-980

JIM DORISME,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 19, 2006)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Jim Dorisme, through counsel, petitions for review of the final order of the Board of Immigration Appeals ("BIA"), which adopted and affirmed the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny Dorisme's petition for review.

## I. BACKGROUND

In May 2000, Dorisme, a native and citizen of Haiti, arrived in the United States as a nonimmigrant visitor. Dorisme stayed in the United States past the authorized six-month period. On November 16, 2000, Dorisme filed an application for political asylum. On January 10, 2001, the former Immigration and Naturalization Service ("INS") issued a notice to appear, charging Dorisme with removability, pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), which Dorisme conceded.

According to Dorisme's asylum application and his hearing testimony, Dorisme worked for five years as a Haitian police officer. Dorisme began having problems with his supervisor, Guy Phillipe, when Dorisme refused to release people he had arrested who were well-connected politically. When Dorisme arrested one of Phillipe's relatives and refused to release her, Dorisme was transferred to Fort Liberte. In September 1999, while on leave in Port-au-Prince,

2

Dorisme came upon a demonstration by Lavalas, President Aristide's political movement. Dorisme saw six male demonstrators pull a woman from her car and hit her after she attempted to drive through the demostration. Dorisme and another plain-clothed police officer in the vicinity intervened. Three of the men left, but Dorisme arrested the remaining three and took them to the nearest police station.

Two days later, Dorisme was summoned to the police station by the police chief, who reprimanded him for making arrests outside his jurisdiction. As Dorisme left the police station, he noticed one of the men he had arrested outside. As Dorisme proceeded home, he was attacked by three or four men and treated at a local hospital. Thereafter, Dorisme began receiving anonymous phone calls at his home, approximately three times a week, saying that he was not going to get a second chance.

Dorisme was transferred twice more, eventually working in the city of Tomason. Here, Dorisme received a phone call from Ronel Camille, the leader of The Chime, or Chimeres. The Chime's main purpose is "killing, burning and crashing on behalf of" the government. According to Dorisme, Camille had recently murdered a police chief, but had not been arrested because he worked for Jean-Bertrand Aristide, Haiti's president. Dorisme had been assigned the responsibility of securing the voting place for upcoming Senate elections. Camille offered Dorisme a bribe to allow Camille to stuff the ballots. Dorisme refused.

3

After Camille's call, Dorisme received calls at the police station telling him that if he did not negotiate, "his life was in their hands."

After Dorisme was accosted on a bus by two men who told him he had to negotiate, Dorisme decided to leave Haiti. Dorisme testified that, if he returned, the Chime would still want to kill him because "if you don't work for Lavalas, they consider you an enemy." Dorisme also stated that he believed the other police officer who assisted him in making the arrests at the demonstration in Port-au-Prince had been murdered as a result.

Dorisme stated in an addendum to his application that his problems while on the police force were because "he was strict with the rules and did not show favoritism." Dorisme further stated that he did not belong to any particular political group, but that there had been a lot of tension surrounding the then-upcoming 2000 elections. Two fellow police officers were murdered because they refused to cooperate with powerful government people.

The IJ made no adverse credibility findings, but found that being harassed for refusing to cooperate in police corruption was not persecution "on account of" Dorisme's political opinion or imputed political opinion. The IJ concluded that the Haitian government and the National Police were extremely corrupt, without regard to political opinion, and that the Chime were "criminals pure and simple," and "essentially a paid goon squad that apparently are being paid at the present

4

time by the political party that now has the bulk of the political power in Haiti." The IJ noted that the record did not disclose that Dorisme had any political opinion at all, as he never stated that he was for or against the Lavalas, but was simply trying to do his job of enforcing the law without regard to political considerations. Thus, the IJ concluded, the threats and intimidations Dorisme suffered were the result of his harassers' political opinions, not his own.

The IJ found that because Dorisme could not establish past persecution based on his political opinion, he failed to demonstrate a reasonably possibility of future persecution and, therefore, also failed to establish the higher burden of proof of withholding of removal. Dorisme appealed to the BIA, challenging only the IJ's findings as to past persecution and withholding of removal. The BIA adopted and affirmed the IJ's decision.

Pursuant to 28 U.S.C. § 2241, Dorisme filed a habeas petition in the United States District Court for the District of Connecticut. In the § 2241 petition, Dorisme asked the district court to grant his asylum application or, in the alternative, grant withholding of removal or CAT relief. The district court entered an order transferring the petition to this Court as a petition for review, pursuant to § 106 of the Real ID Act, Pub. L. No. 109-13, 119 Stat. 231.

## II. DISCUSSION

### A. Transfer of CAT Claim

Section 106(c) of the REAL ID Act provides that if an alien's § 2241 habeas petition challenges a final administrative order of removal, the district court shall transfer the case to the circuit court of appeals where a petition for review could have been properly filed. Specifically, § 106(c) states:

> If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal . . . is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case . . . to the court of appeals for the circuit in which a petition for review could have been properly filed . . . .

REAL ID Act § 106(c), Pub. L. No. 109-13, 119 Stat. 231, 311. Dorisme concedes that he is removable for overstaying his visa, but requests relief from removal in the form of asylum, withholding of removal or protection under CAT. Dorisme does not contest the transfer of his asylum and withholding of removal claims. However, Dorisme argues that the portion of his § 2241 petition seeking review of the denial of CAT relief does not constitute a challenge to his final order of removal and, thus, should not have been transferred pursuant to § 106(c).

The problem for Dorisme is that we lack appellate jurisdiction to review a transfer order of a district court sitting outside this circuit. See, e.g., Murray v. Scott, 253 F.3d 1308, 1314 (11th Cir. 2001); Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 985-87 (11th Cir. 1982). Indeed,

6

Dorisme has appealed the transfer order to the Second Circuit Court of Appeals. See Dorisme v. Gonzalez, No. 06-1242 (2d Cir. filed Mar. 16, 2006).

In any event, we lack jurisdiction to review the merits of Dorisme's CAT claim because he failed adequately to raise it before the BIA. See Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003) (concluding that the exhaustion requirement in 8 U.S.C. § 1252(d) is jurisdictional and bars review of claims not raised before the BIA); De La Teja v. U.S., 321 F.3d 1357, 1366 (11th Cir. 2003); see also INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). Thus, we address only the merits of Dorisme's asylum and withholding of removal claims.

**B.      Asylum and Withholding of Removal**

On appeal, Dorisme argues that his refusal to participate in police corruption was a political opinion for purposes of asylum and withholding of removal. "A factual determination by the BIA that an alien is statutorily ineligible for asylum or withholding is reviewed under the substantial evidence test." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001) (quotation marks omitted). However, to the extent the BIA's decision regarding asylum or withholding is based on a legal determination, such as the meaning of the phrase "on account of political opinion" as it is used in the INA, our review is de novo. Perlera-Escobar v. Executive Office for Immigration, 894 F.2d 1292, 1296 (11th Cir. 1990).

7

It is well-settled that "[p]ersecution on account of . . . political opinion . . . is persecution on account of the <u>victim's</u> political opinion, not the persecutor's." <u>Sanchez v. U.S. Att'y Gen.</u>, 392 F.3d 434, 437-38 (11th Cir. 2004) (quoting <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 482, 112 S. Ct. 812, 816 (1992)). Thus, being targeted because one refuses to cooperate with a guerilla group to further their political goals is not persecution "on account of political opinion." <u>Id.</u>; <u>see also</u> <u>Elias-Zacarias</u>, 502 U.S. at 482, 112 S. Ct. at 816 (explaining that the "mere existence of a generalized 'political' motive underlying the guerrillas' forced recruitment" does not establish that the alien fears persecution on account of political opinion).[1]

The Chime's efforts to force Dorisme to engage in corruption to further their (or their employer's) political goals does not constitute persecution on account of Dorisme's political opinion. Dorisme has candidly admitted that he was harassed and threatened because he refused to show favoritism to any political party or

_____

[1] In reviewing the BIA's legal determinations, we accord <u>Chevron</u> deference to the BIA's interpretation of the statutes and regulations it administers. <u>Castillo-Arias v. U.S. Att'y Gen.</u>, 446 F.3d 1190, 1195 (11th Cir. 2006). Dorisme argues that we should accord <u>Skidmore</u> deference rather than <u>Chevron</u> deference where, as here, the IJ's decision has been summarily affirmed by the BIA. We reject Dorisme's argument. In two prior cases where the BIA summarily affirmed the IJ's decision without opinion, this Court has reviewed the IJ's removal order as the agency's final decision and stated that under <u>Chevron</u> we defer to the agency's interpretation of its statutes and regulations if it is reasonable and does not contradict the clear intent of Congress. <u>See</u> <u>Silva v. U.S. Att'y Gen.</u>, 448 F.3d 1229, 1243 (11th Cir. 2006); <u>Antipova v. U.S. Att'y Gen.</u>, 392 F.3d 1259, 1261 (11th Cir. 2004). Thus, under our precedent, <u>Chevron</u> deference applies to an IJ's decision when it is summarily affirmed by the BIA without opinion.

movement in performing his duties as a police officer. In other words, Dorisme was targeted because of his moral stance, not his political one. While it is unfortunate that Dorisme has suffered for his laudable professional ethics, as a matter of law, he is not entitled to political asylum. Furthermore, the IJ's findings that there was no evidence in the record of Dorisme's own political opinion, or that the Chime's actions were motivated by it, are supported by substantial evidence.

Dorisme cites opinions from the Second and Ninth Circuits for the proposition that opposition to corruption can be considered a political opinion. See Zhang v. Gonzalez, 426 F.3d 540 (2d Cir. 2005); Desir v. Ilchert, 840 F.3d 723 (9th Cir. 1988). To the extent these cases hold that a person's refusal to accede to the extortionate demands of a guerrilla group constitutes a political opinion, they are inconsistent with this Circuit's precedent in Sanchez. We note, however, that Zhang is also factually distinguishable. In Zhang, the petitioner did more than refuse to cooperate; he actively opposed the extortionate practices of government officials by writing letters of protest to government agencies and newspapers, by soliciting support from other businesses, and eventually participating in an organization that opposed one-party rule in China. Zhang, 426 F.3d at 542-43. In essence, the petitioner in Zhang became an activist who tried to take on a governmental scheme of extortion. Dorisme did not crusade against police corruption by the Chime or its politically connected employers. Dorisme simply

9

refused to cooperate with the Chime.  Under the reasoning in <u>Sanchez</u>, Dorisme's mere refusal to cooperate with the Chime was not a political opinion or an imputed political opinion.

For these reasons, we deny Dorisme's petition for review.

**PETITION DENIED.**