[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 3, 2007
THOMAS K. KAHN
CLERK

No. 06-12959
Non-Argument Calendar

_____

Agency No. A78-582-980

MARC CLERVEAU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 3, 2007)**

Before BLACK, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Marc Clerveau, a native and citizen of Haiti, entered the United States on or

about August 23, 2000, without being admitted or paroled, and the INS[1] issued a notice to appear, charging him with removability under INA § 212(a)(6)(A)(i); 8 U.S.C. § 1182(a)(6)(A)(i). Clerveau applied for asylum relief, and requested withholding of removal and relief under the United Nations Convention Against Torture ("CAT").

At the hearing before an Immigration Judge, Clerveau conceded his removability and testified as follows: He had been a police officer in Haiti since 1995, working in Port-Au-Prince and Cit Soleil. In July 1999, Lavales members tried to recruit him to join the party, but he refused and was threatened as a result. In April 2000, while Clerveau was not home, several men drove by his home and shot at the house. Based on a description by his neighbor, Clerveau knew the shooters were men he had arrested in the past. While on patrol in July 2000, he and his partner stopped to change a flat tire and two men - Ronald Cadavre and Charles Francoeur - drove by and fired at them. One bullet struck Clerveau's radio and pieces ricocheted into his leg. Both Clerveau and his partner filed police reports, but the police commissioner informed them that no one would be arrested for the incident. That same evening, both Clerveau and his partner received threatening phone calls. The following day, Clerveau and his partner resigned and

---

[1] In 2002, President Bush signed into law the Homeland Security Act, which created a new Department of Homeland Security and abolished the INS, transferring its responsibilities to the new department. Because the case initiated before the transfer, we refer to the INS.

fled the country.

Clerveau admitted that there were inherent risks in being a police officer, and that he had suffered other incidents that he did not mention because of those risks. He stated that he feared Lavales would kill him if he returned. Clerveau offered his partner's testimony to corroborate, but the IJ stated that it was unnecessary because Clerveau's testimony was credible.

Clerveau submitted supporting evidence including (1) a police report from the shooting; (2) the State Department Country Reports from 2001 and 2003, indicating that Cadavre had not been arrested despite being tied to various murders and that Lavales members are not constrained by police and criminals act with impunity; and (3) a State Department press statement from 2004 in which the U.S. government noted that pro-government forces had killed policemen.

The IJ denied relief, finding that the attacks were not "on account of" an enumerated ground, and therefore, Clerveau had not shown that he suffered persecution. The IJ further found that there had been changes in the Haitian government since Clerveau left the country. Clerveau appealed to the Board of Immigration Appeals ("BIA"), arguing that the shooting qualified as persecution and that his work as a police officer was an immutable characteristic for which he was persecuted. He also noted that the unrest and violence continued, making it unsafe for him to return. The BIA summarily affirmed. Clerveau now petitions

3

this court for review.

Clerveau argues that the IJ erroneously concluded that he did not suffer from persecution because he was shot by Lavales members in opposition to his political opinion and this was not a normal risk associated with being a police officer. He further asserts that the situation in Haiti has not improved, and that he established a well-founded fear of future persecution. He also asserts that he is a member of a particular social group - that of former police officers targeted by Lavales.[2]

Where the BIA adopts the IJ's decision, we review the IJ's decision as adopted by the BIA. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1235-36 (11th Cir. 2006); Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005). To the extent that the IJ's decision was based on a legal determination, we review the decision de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006); D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's factual determinations are reviewed under the substantial evidence test, and this court "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v.

_____

[2] Clerveau raises his claim that he is a member of a particular social group - i.e. former policemen - for the first time on appeal. Because he did not raise this issue before the BIA, he has not exhausted it, and we need not consider it. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). Additionally, Clerveau does not argue that the IJ erred by denying withholding or CAT relief. Therefore, he has abandoned those issues. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation and internal marks omitted). Additionally, "[u]nder the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Ruiz, 440 F.3d at 1255. Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (quotation omitted).

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines "refugee" as follows:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) & (B) (emphasis added). The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284. To meet this burden, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "Only in a rare case does the record compel the conclusion that an applicant for asylum has suffered past persecution or

has a well-founded fear of future persecution." Silva, 448 F.3d at 1239.

Here, even assuming that the shooting incident constituted "persecution," Silva, 448 F.3d at 1238, the issue is whether the persecution was "on account of" Clerveau's political opinion. The IJ concluded that it was not. We agree.

We cannot say that the IJ erred in finding that a police officer's refusal to join Lavales members constituted persecution on account of the officer's political opinion.[3] Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (explaining that persecution due to refusal to join guerilla forces is not persecution on account of a political opinion). The record reflects that Clerveau received numerous threats to join Lavales, but he did not feel the need to leave Haiti until the shooting. Moreover, Clerveau conceded that there were inherent risks in police work. And, although the country reports indicate the widespread violence and Lavales's tendency to murder policemen, there is no evidence that this is related to a political opinion.

Accordingly, Clerveau cannot show that he was persecuted on account of his political opinion, and the IJ properly denied asylum relief. Therefore, we DENY the petition.

---

[3] In a recent unpublished opinion, which is not binding, this court rejected an identical claim, concluding that persecution of a police officer by Haitian rebels was not "on account of" a political opinion. See Dorisme v. U.S. Att'y Gen., 2006 WL 2671931, at *4 (11th Cir. Sept. 19, 2006) (unpublished).