[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13980

_____

L.E.,
By and through their parent and
next friend, Sara Cavorley,
B.B.,
A minor, by and through their parent and
next friend, Elizabeth Baird,
A.Z.,
A minor, by and through their parent and
next friend, Jessica Zeigler,
C.S.,
A minor, by and through their parent and
next friend, Tarasha Shirley,

Plaintiffs-Appellants,

*versus*

SUPERINTENDENT OF COBB COUNTY SCHOOL DISTRICT,
RANDY SCAMIHORN,
DAVID BANKS,
DAVID CHASTAIN,
BRAD WHEELER,
In their official capacity as members of
the Cobb County School Board,
COBB COUNTY SCHOOL DISTRICT, et al.,

                                    Defendants-Appellees.

—————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-04076-TCB

—————————————————

Before WILSON, JILL PRYOR, Circuit Judges, and RUIZ,[*] District Judge.

WILSON, Circuit Judge:

    Plaintiffs-Appellants L.E., B.B., A.Z., and C.S., are students who have respiratory disabilities ("Students"). They appeal the denial of their motion for a temporary restraining order and

_____

[*] Honorable Rodolfo A. Ruiz II, United States District Judge for the Southern District of Florida, sitting by designation.

preliminary injunction. The Students sued Defendants-Appellees the Superintendent of the Cobb County School District, individual members of the Cobb County School Board, and the Cobb County School District (collectively, "CCSD"), in the wake of the COVID-19 pandemic. The Students claim that CCSD's refusal to provide reasonable accommodations for access to in-person schooling constitutes a violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").

After careful review and with the benefit of oral argument, we hold this claim presents a live controversy that survives mootness and the district court erred in its review of the Students' discrimination claims.

## I.

Each of the Students attends a Cobb County school and has a disability recognized by both the ADA and Section 504. As a result of the global COVID-19 pandemic, CCSD enacted a 2020–2021 COVID-19 policy that included masking requirements, social distancing, frequent cleaning and sanitizing of classrooms, and strict quarantine requirements. In the spring and summer of 2021, all Cobb County students were given the option to attend school either virtually or in-person for the 2021-2022 school year. The Students chose to attend school in-person based on CCSD's assurances that the district would follow the Centers for Disease Control and Prevention ("CDC") guidelines and that the safety procedures in the 2020–2021 COVID-19 policy would remain in place.

However, after the Students elected to attend school in-person but before the 2021-2022 school year began, CCSD ended many of the COVID-19 safeguards previously imposed. The new policy no longer included mandatory masking, did not mandate COVID-19 vaccinations for students or staff, and lessened the quarantine and social distancing requirements. As a result, the Students' parents removed them from in-person schooling and filed this lawsuit. They alleged that unless CCSD reimplemented certain safety measures, the Students would be unable to attend in-person school and would suffer irreparable harm. The Students filed a motion for a temporary restraining order and preliminary injunction with their complaint. The district court denied the motion, and the Students timely appealed.

## II.

The denial of a preliminary injunction "rests within the sound discretion of the district court." *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir. 1987). We will reverse only if the district court abused its discretion or if the denial is contrary to a rule of equity. *Id.* Underlying findings of fact are reviewed for clear error, and legal conclusions are reviewed *de novo*. *Transcon. Gas Pipe Line Co. v. 6.04 Acres*, 910 F.3d 1130, 1163 (11th Cir. 2018).

To obtain a preliminary injunction, a movant must show (1) a substantial likelihood that it will ultimately prevail on the merits of the underlying case; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction

may cause the opposing party; and (4) that if issued, the injunction would not be adverse to the public interest. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010). Preliminary injunctions are considered "drastic remed[ies]," and the moving party must satisfy the burden of persuasion as to all four elements. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001).

## III.

We begin by addressing CCSD's assertion that this appeal is moot due to changes in the COVID-19 landscape before turning to the merits of the Students' appeal.

### *A. Mootness*

CCSD claims this appeal is moot because the CDC COVID-19 guidelines no longer recommend mandatory masking, and the Students argued for a mask mandate at the motions hearing. Because the Constitution limits the jurisdiction of federal courts to live cases and controversies, we must first determine whether this case is justiciable.

Article III of the Constitution requires "a case or controversy to exist at all times during the litigation." *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022) (cleaned up). "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability

to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335–36 (11th Cir. 2001) (per curiam). If a case becomes moot while on appeal, this court will not consider the merits presented, "but instead vacate[s] the judgments below with directions to dismiss even if a controversy did exist at the time the district court rendered its decision." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1309–10 (11th Cir. 2000).

The Students' prayer for relief in their motion for preliminary injunction and temporary restraining order saves this case from mootness. The Students ask the court to "[o]rder Defendants to develop and implement policies, practices, procedures, and protocols for a multilayered COVID-19 mitigation strategy that follows CDC guidelines for COVID-19 Prevention in K-12 Schools and maintain consistency with the CDC guidelines in the event of subsequent changes, so that Plaintiffs can attend in-person school[.]" The CDC guidelines have changed, as the motion anticipated, but CCSD's policies remain at odds with the current guidelines.

At the time the district court denied the motion, the CDC guidelines required masking in all schools. Since then, however, the CDC has updated its guidance. At the time the parties briefed this appeal, the CDC recommended that schools base their masking policy on the corresponding COVID-19 risk-level in the community where the school district sits. *See Transcript for CDC Media Telebriefing: Update on COVID-19*, Centers for Disease

Control       and       Prevention       (Feb.       25,       2022),
https://www.cdc.gov/media/releases/2022/t0225-covid-19-up-
date.html ("Since July 2021, CDC recommended universal masking
in schools, no matter what level of impact COVID 19 was having
on the community. With this update, CDC will now only recom-
mend universal masking in communities at the high level."). If the
district was at a "low" or "medium" risk level, the CDC recom-
mended a mask-optional policy. At the time of this appeal, Cobb
County was at a "low" risk level, and its COVID-19 policy reflected
a mask-optional approach.

CCSD maintains that this appeal is moot because the Stu-
dents sought mandatory masking at the motions hearing. Since the
CDC guidelines no longer require a mask mandate, CCSD con-
tends that an order forcing them to follow CDC guidance would
not grant effectual relief. We disagree. This argument ignores cru-
cial facts in the record that illuminate the Students' actual re-
quested relief.

Specifically, CCSD relies on the arguments put forth in the
motions hearing to support its claim that the Students are asking
solely for a mask mandate. In that same hearing, however, CCSD
undoubtedly stated that the Students sought additional relief:
"[The Students] are asking this Court for more than just a mask
mandate. They are asking this Court to order the district to strictly
comply with each and every one of the CDC's recommendations."
Part of those recommendations include (both now and at the time
of the hearing) guidance for schools on how to accommodate

students with disabilities.  The Students argue that CCSD ignored those recommendations and continues to disregard CDC guidance in this respect.  Therefore, this remains a live controversy.  A judgment in their favor would grant the Students meaningful relief by requiring CCSD to follow the guidance on accommodating students with disabilities under the ADA and Section 504 as it is updated—a practice the Students claim CCSD refuses to do.[1]  Thus, this claim remains a live controversy.

---

[1] CCSD asks us to follow the Third Circuit's reasoning in *Doe 1 v. Upper Saint Clair Sch. Dist.*, No. 22-1141, 2022 WL 2951467 (3d Cir. Mar. 1, 2022) to find this appeal moot.  After reviewing the docket and assigning the appropriate context, we decline to follow the Third Circuit because the facts are materially distinguishable.

 In *Upper Saint Clair*, the court compelled supplemental briefing on why the pending appeal—an appeal from the grant of a temporary restraining order forcing a school district to impose mandatory masking—was not moot in light of new CDC guidelines only recommending mandatory masking at high risk levels.  Order, Doc. 26 at 1, *Doe 1 v. North Allegheny Sch. Dist.*, No. 22-1160 (3d Cir. Feb. 25, 2022) (consolidated with *Upper Saint Clair*, *see* Doc. 9).  Plaintiffs sought mandatory masking "for as long as the risk level is classified as 'substantial' or 'high.'"  *Id.*  Though not explicitly stated by the Third Circuit, we conclude that the prayer for relief in that case was conditioned on the community's level of risk.  Since the health landscape had drastically improved by the time the appellate court heard the case, such that the county was no longer at the required level of risk, the court found the claim moot.  *See Upper Saint Clair*, 2022 WL 2951467 at *1 ("[W]e agree with the parties that . . . this matter is moot[.]").

 In contrast, here the Students' prayer for relief is not conditioned on the community's risk level.  Instead, it anticipates subsequent changes in CDC

21-13980                Opinion of the Court                9

## B. *Substantial Likelihood of Success on the Merits*

The district court denied the Students' motion, finding they did not demonstrate substantial likelihood of success on the merits under a failure to accommodate or disparate treatment theory of discrimination.    The Students contend that the district court abused its discretion in evaluating whether their ADA and Section 504 claims had a substantial likelihood of success on the merits because the district court reframed the scope of the "service, program or activity" the Students seek and did not consider each of the Students' theories of discrimination.[2]  To succeed on either claim, the Students must show three elements: (1) that they are "qualified individual[s] with . . . disabilit[ies];" (2) that they were "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity;" and (3) "that the exclusion, denial of benefit, or discrimination was by reason of the [plaintiffs'] disabilit[ies]." *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011).

The district court held the Students are unlikely to establish the second element listed above because there are two distinct

---

guidance and requests CCSD adhere to the guidelines as they change, no matter the level of risk.

[2] ADA and Section 504 claims are governed by the same legal standard.  *J.S., III ex rel. J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (per curiam).

categories of disability discrimination claims under the ADA—failure to accommodate and disparate treatment—and the Students' arguments fall short of proving either. In so holding, the district court did not consider the Students' unjustified isolation claim under *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). Rather, the district court held that the Students' attempt to allege disparate treatment was not persuasive because CCSD's policy was facially neutral. The district court rejected the Students' assertion that additional restrictions were necessary to reasonably accommodate them and provide meaningful access to in-person schooling. Instead, it adopted CCSD's view that the school district's COVID-19 policy and, specifically, the availability of virtual schooling, sufficiently accommodated the Students' disabilities and provided them with meaningful access to education. The district court found that while the Students may prefer stricter policies, CCSD is not required to provide them; what is required is simply meaningful access to education. *L.E. v. Ragsdale*, 568 F. Supp. 3d 1364, 1369 (N.D. Ga. 2021).[3]

### 1. Reasonable Accommodation

On appeal, the Students argue that the district court impermissibly broadened their claim and redefined the scope of the program at issue in this case. We agree. The district court erred by misconstruing the Students' argument as a right to education

---

[3] Chris Ragsdale is the Superintendent of the Cobb County School District and a named defendant in the proceedings below.

*generally*, despite the record clearly establishing that the Students are alleging a denial of access to *in-person* education—a specific "service, program, or activity" that CCSD provides to all students.

The Supreme Court instructs courts to focus on narrow programs and benefits offered by a public entity when evaluating claims under the ADA and Section 504. *See Alexander v. Choate*, 469 U.S. 287, 301 & n.21 (1985) (citing the government's statement that "[a]ntidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit"). In addition to the record below plainly establishing that the Students seek in-person education, CCSD also conceded at the motions hearing that they understand the complaint to request access to in-person education, rather than education generally.[4] Given the Supreme Court's direction and the parties' agreement on the relevant claim, we hold that the district court abused its discretion by misconstruing the scope of the program at issue.

Nevertheless, CCSD maintains that the district court was correct because a public entity need only provide a reasonable accommodation—not the Students' preferred or requested accommodation. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285–86 (11th Cir. 1997). Because CCSD made a virtual schooling opportunity available, they argue, they have

---

[4] Further, CCSD confirmed at oral argument that it must provide reasonable accommodations for access to in-person schooling.

adequately provided the accommodations necessary to ameliorate a disability's effect of preventing meaningful access to the benefits of, or participation in, the program at issue. CCSD's argument fails, however, because the district court did not analyze the correct "program at issue." The Students allege that CCSD refuses to consider reasonable accommodations to allow them access to *in-person classes*, not just education generally. The district court did not consider whether virtual schooling can constitute a reasonable accommodation to provide the benefits of in-person schooling. The district court stopped short of the operative question, instead deciding that "[s]o long as Plaintiffs are offered meaningful access to education—and the Court finds that they have been—Defendants have adequately accommodated Plaintiffs . . . ." *Ragsdale*, 568 F. Supp. 3d at 1369.

To prevent the antidiscrimination legislation from being emptied of its meaning through broad definitions of the program at issue, we are compelled to reverse.[5] The district court's re-definition of the public program was an abuse of discretion. On remand, the district court must analyze whether virtual schooling is a reasonable accommodation for *in-person* schooling, not education in general. And if it is not, the district court must consider

---

[5] *See, e.g.*, *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503–05 (4th Cir. 2016) (finding that because a specific method of voting was available to everyone, that method of voting, not voting in general, was the "appropriate object of scrutiny for compliance with the ADA and [Section 504]").

whether the multi-layered approach to COVID-19 precautions the Students seek constitutes a reasonable accommodation.

### 2. Unjustified Isolation

The Students also argue that the district court abused its discretion in holding that the Students must show either failure to accommodate or disparate treatment, without acknowledging the Students' discriminatory isolation theory under *Olmstead*. Relatedly, the Students argue that the district court wrongly concluded that a facially neutral, uniformly applied policy cannot form the basis of a discrimination claim. We agree.

The Supreme Court, in *Olmstead*, held that "unjustified isolation" is "properly regarded as discrimination based on disability." 527 U.S. 581, 597 (1999). That is because such isolation "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." *Id.* at 600. An *Olmstead* isolation claim is separate and distinct from a disparate treatment or failure to accommodate theory. In other words, the Students need not show disparate treatment to be successful on the merits of their *Olmstead* isolation claim.

Additionally, facially neutral, uniformly applied policies can give rise to discrimination claims without evidence of disparate treatment. The Supreme Court has explained that disability discrimination "was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference – of benign neglect." *Choate*, 469 U.S. at 295. The

various forms of discrimination against disabled individuals are frequently facially neutral, but nevertheless effectuate discrimination against disabled people.

Accordingly, the district court erred in holding the Students must show a substantial likelihood of success on the merits on a disparate treatment claim. Because the Students also bring their ADA and Section 504 claims under an *Olmstead* theory of unjustified isolation, on remand, the district court must also analyze the Students' likelihood of success on the merits under this theory.

## IV.

The Students' claim is not moot because their prayer for relief seeks an order requiring CCSD to comply with CDC guidelines for COVID-19 precautions in schools. The CDC guidance recommends that schools "must make reasonable modifications or accommodations when necessary to ensure that all students, including those with disabilities, are able to access *in person* learning"— recommendations the Students allege that CCSD continues to ignore. *Operational Guidance for K-12 Schools and Early Care and Education Programs to Support Safe In-Person Learning*, Centers for Disease Control and Prevention (Oct. 5, 2022), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-childcare-guidance.html. (emphasis added). Additionally, the district court abused its discretion in redefining the scope of the program for which the Students are seeking accommodations and failing to consider the Students'

unjustified isolation theory.    Accordingly, we REVERSE and REMAND for analysis under the correct scope: access to the benefits provided by in-person schooling.

**REVERSED** and **REMANDED.**